The Fourth District Appeals Court of the State of Illinois does reconvene. Your Honor, Thomas M. Harris presiding. Please be seated. This next case is case number 4-25-0038 Connie Johnsey, if I'm pronouncing that correctly et al. v. Mungel Schnepf et al. Let's proceed with appearances. First for the appellant. David Herman, Your Honor. All right. Thank you. And for the appellee? John Leonard, Your Honor. All right. Thank you. Mr. Herman, you may proceed with your argument. Thank you, Your Honor. Good afternoon. May it please the Court, Counsel. This appeal arises from the trial court's decision on interpreting Article 16 of the Melita Maxine Schnepf Trust. That article says, this trust shall terminate upon the death of the latter beneficiary as set forth in Article 2 hereof. And at that time, the trustee shall convert the real estate, distribute the proceeds to my remaining children in equal shares per service. In interpreting Article 16, the trial court concluded that the proceeds should be divided into seven equal shares, which include two children who pre-deceased the termination of the trust. The trial court held that the term remaining children, and at that time, did not create a condition requiring the child to be alive at the time the trust termination occurred. The facts in this case are straightforward. Melita created the trust in 2001 with eight living children. One son, Jim, had passed prior to her making that trust, and he left no descendants. She was the first wife beneficiary until her death in 2008, and her son, Lyndall, was the wife beneficiary. He died in 2022. Two other children of Melita's passed prior to his death, mainly Carolyn in 2015 and Joseph in 2017. Both of them did leave descendants. At the time of Lyndall's death, there were five remaining Schnepp children alive. In April of 2024, two years after Lyndall's death and the trust terminated, the trust sold the real estate at auction, and in May of 2024, the trustee sought direction from the trial court asking, how shall I distribute this proceeds? Should it be five ways or seven ways? The court ordered that my remaining children, and at that time, did not require survivorship and said it should be split seven equal ways. We believe it should have been five. The parties came to agree on a few things. The trust document does not define the term, my remaining children, and neither party could find controlling Illinois case law that defines that term either. The court set forth three reasons in support of its order. It said the term remaining children did not suggest survival, that two, the appellants ignored the term persterpes contained in Article 16, and that there was no specific language indicating that the child needed to survive to take under the trust. Now we believe that was an error. We believe the phrase, my remaining children, used in the trust requires survivorship after a member's death or the trust termination, and that the trial court order should be reversed. Now the court today is tasked- I think you're saying that there's no case that helps explain that. We could find an Illinois case. We did find a Pennsylvania case out of obviously just persuasive, and that Pennsylvania case we cited in Berg that says, in that case, the court concluded that the natural meaning of the phrase, my remaining children, is those remaining or surviving when the event, the trust terminating, occurred. So when the trust terminated, it's my remaining when the trust terminated. So we did find an out-of-state case, but no in-state case. Would that be in conflict with persterpes? I think so. Yes, your honor. I do. And the problem that we have is you either believe our interpretation, which is that she used persterpes in a sense that said, hey, there's a question as to when the class was created, and the trust creates the class upon termination of the trust. So if someone's alive, and there's five children alive, that's when the class is defined. But under the defined pay-over rule in Harris v. Beach, that says it's not vested until distribution, that she wanted to keep it in her line of blood during that time period. So rather than vesting it in its entirety upon the death of or the termination of the trust, I don't want to say conditionally vested, but it identifies the class to take. Remember, she said, my children, she didn't say my descendants, my heirs, my grandchildren. All of these people are not her children that are trying to take, that we're trying to, that are the two additional sharers. So yes, there is an inherent conflict, but the inherent conflict is, if you read persterpes, then you read out my remaining children at the time of the trust termination. So we've got a conflict between those two, and the question becomes, how does the court do that conflict if they agree with us? And if possible, the court's tasked with giving meaning to all of the terms of the trust, if possible. But if it frustrates the intent of the testator or the settler, then they have to defer that rule of construction to what makes sense. And I think we cited those cases, I think that's Spencer and also Jackson in our briefing as to, you have to, if possible, give effect to all the wording, and if not, you have to defer to some of those rules of construction. And we think the rule of construction, said Foylton Harris versus Beach, is controlling here. Could I add something, Mr. Herman? Yes, sir. I just want to make sure of something after Justice Connacht's question here, in relation to what you wrote in your brief. It was my understanding, in terms of what you wrote in your brief, is that you were offering an interpretation that would not result in persterpes being found meaningless. And that is, you considered it to be, that the operative event would have been Lindelschnapp's death. That would have been the time at which you would determine the class, but prior to distribution of the funds. Is that right? Yes, that's correct, Your Honor. Okay. And is that your argument here today? That is still my primary argument, yes. However, if you're persuaded by Putley's argument, that that doesn't make sense, in that it's vested at the time of the trust termination, rather than under the divide and payover rule in Harris versus Beach, at the time of the actual distribution of it. Because remember, Harris versus Beach said there's contingencies. The contingency is not only that the assets have to be, the assets not only have to be divided and distributed as a contingency, you have to be allowed to take. So rather, there's two contingencies under the divide and payover rule. So by her saying prosterpies, she cures the second contingency requiring to be allowed at the time of distribution. So it keeps that money in her class and in her bloodline versus to a stranger, to a charity, to a spouse. It keeps it in her bloodline. That's our primary argument, yes. Well, consider this scenario. Let's just say that following Lindelschnapp's death, and I'm just going to make up a scenario here, you have the death of one of the siblings who has two children. So the class is identified as of the date of death of Lindell, correct? Yes, and we're terminating the trust, yes. Okay. So at that point, a determination is made as to what that person's share would have been. Correct. Now, as of that time, that would be an asset of the deceased child's estate, correct? It wouldn't be until it's not fully vested, and under the Beach case, it says it's not fully vested until it is actually distributed. So the class is defined, but before distribution, it's not vested. So that's why Per Sturpes is in there, to make sure it gives it to anybody who survives. So then Mileta could give it to her descendants versus her children. So it's kind of a non-wordy, I couldn't find the wordy. Are you saying that the distribution then would bypass the deceased child's estate? I would say it wasn't fully vested until it's distributed, yes. Because it's not fully vested under the divide and pay over rule until it's distributed. And it says the trustee, it would not be ascertained until the trustee actually distributed the  So you have to have distribution, and the problem here is you have two years where someone could have passed. So at the time, our position is at the time when the Oak Creek Supplier's five, when your hypothetical started, if one of those people died and they had descendants, those descendants would take that person's share and step up into their shoes under the Per Sturpes language. That's our primary argument. Yes, Your Honor. Okay, thank you. If you disagree with that, then the argument is there's a conflict, and what do you do? What's the court do? Because we believe the trial court read out the time remaining at that time. So if we look at that, Judge, in fact, even an oral argument, I think, at the trial court, the appellees said, you just need to ignore my remaining and just figure and fixate on Per Sturpes and gave Per Sturpes the trump card, even though it said my remaining at the time of the trust termination. And we believe you have to read the adjective in there, my remaining children, just not my children. And as such, we believe that we gave the court lots of language. We said that the court, we gave dictionary definitions, synonyms. We look at remaining and surviving are synonyms. Remaining is also a synonym for alive. We have an out-of-state court case that said that was the proper way to interpret. And we also said because of the introductory phrase in that sentence, at that time, which is at the time of the trust termination, I give to my remaining children. Who are my remaining children at that time? So how the trial court did it, we believe they let those out. There's no other way to do that at that time, my remaining children. It says a time fixed, in the time continuum, at that time of the trust termination, my remaining children. And because the court didn't, they fixated on Per Sturpes, and the court wasn't persuaded by our argument. So we came up with a secondary argument, Your Honor, that if you don't, aren't persuaded, then you have to give it, that interpretation reads out part of the trust. It doesn't effectuate the intent of the sub-layer. And because of that, we believe that the trial court, when it said there was no survivorship language in the trust, we believe it was, again. Synonym for surviving, synonym for alive. Says the out-of-state court dictionaries, they all support our interpretation. And if you can't square those, and you think that they're right, or that our interpretation is wrong, you're balancing my remaining children at the time of the trust termination with Per Sturpes, then the court's got a conundrum. Because they have to decide what can happen with those two. And the question is which effectuates the testator and the sub-layer's intent, which the court's tasked with. And here we believe it's clear that our interpretation, or at least we believe what the interpretation should be, as she wanted to keep it in her bloodline, that she was trying to prevent something that happens when the class is defined versus when distribution is truly vested. Now remember, the court said at the trial court that it was vested when she signed it. When she signed the trust, that was a vested interest. They favored early vesting. We cited Harris versus Beach on that case. And we said that's not, it used to be that it was always implied. That's not the rule anymore. And we cite to the divide and pay over rule, which is pretty on point here. It says, under the divide and pay over rule, when a trustee is directed to divide or distribute a gift to a class at a time after a settler's death, the gift is contingent and possession and enjoyment of that gift are delayed until this time of distribution. The gift is contingent under the rule, which makes it a contingent remainder, not only because it's dependent upon the happening of an event, the trustee dividing and distributing the assets, but also because the member of the class who would be alive and would be able to enjoy it would not be ascertained until the trustee performed their duty of distributing and dividing. Tell me what happens with keeping it in the bloodline if there's seven distributions rather than five. Well, it's the interpretation of what she wanted. And why she wanted, when you say keep it in the bloodline, that goes to where she wanted a deceased member of her children to be able to give it to a spouse or to a charity. She wanted to keep it within her bloodline. That's why she put purse derbies in there. As to whether she wanted five versus seven children, I think she wanted people that lived, she wanted to take care of Lyndall when Lyndall was alive, and she wanted to take care of her children when her children were alive. But if her children survived because of the delay in the distribution, she tried to cure that. So if you lived past the termination of the trust, you wanted her other children to have it. So the difference is if your child pre-deceases you, she's not concerned with taking care of her children. But if you're fortuitous enough and unfortunate enough to be alive when the trust terminated, but then passed before it's distributed, then she's taking care of that and it keeps in her bloodline versus going to her estate where it could go to a spouse, it could go to a charity, or it could go by intestacy. I don't know. There's lots of things, but that didn't happen here. That never happened. No one, well, it's still not distributed, but no one has passed since the trust terminated. So that's the distinction there. But we believe the divine payroll rule is a rule of construction and should be applied here. And the court didn't apply that. The trial court didn't apply that. So we believe we provided synonyms, definitions, interpretation, out-of-state jurisdiction, support for our position, divine payroll rule as recognized by the Supreme Court. And because of that, we think that Malina's intent was at the termination of her trust, the farm should be sold and those proceeds should go to her remaining children, my remaining children. And to effectuate that intent, you have to find survivorship. Do you have any questions? Finding her intent is, as in many of these cases, is a fiction. Well... I mean, that doesn't mean we don't use the rules and try to figure it out, but... I agree with that, Your Honor. But here, she could have said to my children. You can't... I believe the difference here is you can't just ignore my remaining children at that time. It's a fixed time in the time continuum. At that time, time of termination of the trust, my remaining children. She could have said my children, my remaining children without at that time. There's lots of things. It's not very artfully morbid, I will admit. This trust is not. Did anybody stand up and claim authorship? We know who the lawyer is, yes. Not involved in the case, I take it. No, this lawyer is not involved in the case. In fact, this case, this trust has been before you before. I was not a party to that. That trust was in 2012. You already have had one case involving this trust and some language involving this trust,  Any other questions from the bench? I don't see any. Thank you. We only have time to revoke. Mr. Leonard? Thank you, Your Honor. Your Honor, counsel, and please support. Our position is much simpler, Your Honor. The defendants concede in their brief that the execution of the trust, the signing of the trust by Mrs. Schnapp was the date to be considered. They make the argument that the definition of remaining is left over after part has been destroyed, taken, used, or lost. In that sentence, Glendale is the person who's been used. A life estate was given to him, so he's used. The second, or the last word, lost is James, who was deceased at the time the trust was signed. The remaining children are the other seven. And the trial court was correct in deciding that. The situation which I questioned and which Judge Brenner brought up was, what happens in the event that all of those siblings die before Lendl? Who gets the property? If the vesting does not occur until after Lendl's death, then it would have to go to the grandchildren under the anti-lapse statute, which demonstrates the absurdity of the appellant's position. Because they're saying if one of the children dies, that child's children don't get it. If the child dies before Lendl. If they all die before Lendl, does that deprive all of the children from the corpus of the trust? It just seems absurd. If you look at the intention of the trustor at the time the trust was set up, she was aware that her son James had died already. She had eight remaining children. She provided for Lendl with the life estate, and then she provided for the other seven children, who were her remaining children. Basically, that's our position, Your Honor. I think the trial court was correct in making that determination. The appellants have not answered Judge Brenner's question. That answer is a problem. I'm sorry to interrupt you. Mr. Herman set forth an explanation as to how his client's interpretation does not make meaningless the words prosterpes. He indicated during oral argument how that would be. Do you disagree? There was a hypothetical that he was asked in terms of a child dying after Lendl's death, but before a distribution would be made, and what would happen to that. I think Mr. Herman indicated that that wouldn't be a vested interest and wouldn't be property of the deceased child's estate, such that it would be governed by the deceased child's estate plan. In other words, it would circumvent the deceased child's estate, and therefore wouldn't run afoul of the prosterpes language within the trust document. Do you agree with that? In a sense, I do, but I think his argument is contradictory. He also stated in his argument today that the vesting doesn't occur until the distribution occurs. What happens if one of these remaining siblings dies between today and this court's ruling? Who gets the property then? The distribution's not been made. Are we back here again? Well, would, and Mr. Herman can answer this, but would it then be limited to, you know, however many children are left living at that point? In other words, no, it wouldn't go to the children of the deceased child. Well, then the prosterpes is meaningless. Okay. It's surplusage. Well, hopefully Mr. Herman will have an answer to that. That basically is our argument, Your Honor. Mr. Herman said this is a contingent remainder, and I don't think that was Judge Brenner's position. He chose that the vesting occurred when the trust was signed. Even if you go to Lindell's death as the date of vesting, the result is the same because the siblings who have passed didn't die till after his death. But with a vested remainder is when all the people are in being and the limitation that terminates the proceeding as state is certain to happen. In this case, when Mrs. Schneff made out the trust, all of her beneficiaries were in being. Lindell was in being. He got a life estate. The other seven were all in being. They were all identifiable, and their date of possession or their determination of when they would get possession would be determined by Lindell's death, which was an event which is certain to happen. There's no uncertainty there. And that's the definition of a vested remainder. So our position is that the remainder was vested at the signing of the trust, or if you want to push it to Lindell's death, that's fine, but the result is the same. Thank you. All right. Thank you. Mr. Herman, rebuttal argument? Judge, no surprise, we believe under the divine payover rule, vesting did not occur at the time the trust was executed. As we cite in our brief, the divine payover rule is a rule of construction. It also assists the court in determining whether a gift to a class is vested or a contingent remainder. Could you respond to the question that Mr. Leonard raised? Which was if a child were to die prior to our ruling. If someone were to die prior to our ruling, it would go to his children. They would step up because that's how the pers terpes is applied. The class is defined when the trust terminates, and then if they die before distribution, it's been for, what is it, 2002, I think. 2002 is when the trust terminated, February 2002, and it's still not distributed. Is that consistent with? That's consistent with our position where the class is defined, and then if someone passes before, so what's there? It's different. If vesting occurs when one of them dies, it splits five ways. If it's my remaining children at the time the trust terminates. Not seven, it's five. Because that's the five children that were alive when the trust terminated. And we believe she had an equal share of pers terpes that if after the trust terminates, prior to distribution under the divine payover rule, then that those descendants of the deceased child that survived the termination of the trust would take and take it out of their estate plan. So it doesn't go. Take it out of whose estate plan? The deceased child that lived past. That was the scenario I was trying to describe to you in my hypothetical, and what if the deceased child's estate plan didn't allow for distribution pers terpes, but gave everything to one child? Wouldn't that then frustrate the pers terpes language? Wouldn't that be directly contrary? You're talking about the deceased child who would take under the trust that was a post-decedent? Yes. Okay, no, because it wouldn't be their asset. She's trying to control. A trust is merely a contract, Judge. And what she's trying to do is control that on a contingency, which is if the child was alive when the trust terminated, but prior to the distribution, when it's fully vested under the Harris v. Beach decision, that she still controls where it goes, and it goes to their children, the deceased child's child, or children, descendants, whatever they are, down from the class. Usually you would see this in my descendants pers terpes or my other terms, my heirs. You don't see it to my children. It defines them just a class, and that's what we're talking about, just a class of children. That creates that class when it terminates. So if one of the five dies, their descendants just step up, and she still controls how that's distributed, and it's not distributed by that deceased child's estate plan. Okay, that's the part I think that I misunderstood before. It does not get distributed per the deceased child's estate plan. That's correct, because under the Harris v. Beach, it's not fully vested until it's distributed. And it's weird because we haven't found any case that's been on point, Your Honor. We haven't found any cases in Illinois that deal with this issue. And if you disagree with our interpretation, then there's a choice of what and how it does it. And there's always an example I can make that throws a wrench in our monkey, something into the analysis here. But under his analysis, if everybody's dead, then they either go under the anti-lab statute, but the anti-lab statute is not a tool for this court to use to determine a definition of a phrase. It's just not. And so what happens when that event occurs? That event never occurred here. So we're using hypotheticals to try to get the court to rely on statutes that have no application. So when he starts talking about the anti-lab statute in his briefing, that's an argument that isn't even applicable to this. But under hypothetical, he tries to make it applicable to persuade the court to make a decision on something that's not in the record of facts and has no application to this case. And finally, it's not the same as if it vested at the time of when she signed it versus what if it vested at the time Linda dies, because it's the difference between seven shares and five shares. That's the difference between those vesting time periods. Any other questions? I don't see any questions. Thank you, Mr. Herman. Thank you, Mr. Leonard. The case will be taken under advisement. The court will issue a written decision. The court stands at recess.